UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TARYN CONLEY, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *  Civil Action No. 1:20-cv-12196-IT |
| | * |
| BRIAN BARDON, SUFFOLK COUNTY | * |
| SHERIFF'S DEPARTMENT, JANE DOE 1, | * |
| JANE DOE 2, JOHN DOE 1, YOLANDA | * |
| SMITH, LISA ENOS, and STEVEN W. | * |
| TOMPKINS, | * |
| | * |
| Defendants. | * |

MEMORANDUM & ORDER

August 11, 2021

TALWANI, D.J.

This case arises from the alleged sexual assault of Plaintiff Taryn Conley by Sergeant Brian Bardon,[1] while Conley was incarcerated at South Bay House of Correction ("South Bay"). She brings claims under 42 U.S.C. § 1983 for violation of the Eighth and Fourteenth Amendments and the Prison Rape Elimination Act ("PREA"), 34 U.S.C. § 30301 *et seq.*, and under state law. Now pending before the court is the Suffolk County Sheriff's Department ("SCSD" or "Sheriff's Department") and Steven Tompkins, Yolanda Smith, and Lisa Enos' ("SCSD Supervisors") Partial Motion to Dismiss [#16]. For the following reasons, the motion is GRANTED.

---

[1] Conley identified the correction officer as Brian Barden, but the Sheriff's Department states that the officer's correct last name is Bardon. Defs' Mem. 1 n.1 [#17].

I. **Factual Background**

As alleged in the Amended Complaint [#4], the facts are as follows. The Sheriff's Department is the state agency that operates South Bay. Am. Compl. ¶¶ 5, 15 [#4]. At all times relevant, Tompkins was the Suffolk County Sheriff; Smith was the Superintendent and the PREA coordinator at the SCSD; and Enos was the PREA compliance manager. Id. at ¶¶ 6-8. In their positions, Smith and Enos were responsible for ensuring South Bay's compliance with PREA. Id. at ¶¶ 17-18.

In 2015, the Sheriff's Department received seventeen allegations of PREA violations by individuals associated with the SCSD; twenty in 2016; fourteen in 2017; and twelve in 2018. Id. at ¶¶ 21-25. Between December 8, 2017, and December 7, 2018, the Sheriff's Department received at least sixteen allegations of staff sexual misconduct. Id. at ¶ 24. In addition, in August 2016, Marlon Juba, an SCSD employee, was indicted for two counts of sexual misconduct with an inmate, to which he later pleaded guilty. Id. at ¶ 26.

Prior to the events at issue here, Bardon allegedly was the subject of five complaints from unnamed detainees. Id. at ¶ 30. Conley also alleges that Bardon exchanged sex for canteen and movies with one female detainee and that he proposed sexual favors in exchange for property, such as shoes, with another female detainee. Id. at ¶ 31. Conley knows the names of both detainees. Id.

In January 2019, Conley was an inmate or pretrial detainee at South Bay. Id. at ¶ 15. On January 8, 2019, during a lockdown, Bardon ordered Conley out of her cell and into a side room, contrary to SCSD procedures. Id. at ¶ 32. The removal of Conley from her cell was monitored by surveillance cameras. Id. Once in the side room, Bardon ordered Conley to perform a sexual act on him. Id. at ¶ 33. Conley refused and tried to leave the side room, and Bardon pulled down her

pants and exposed her buttocks. Id. at ¶ 34. Some of Bardon's actions were captured on video. Id.

Afterwards, Bardon placed Conley in solitary confinement for fifteen days, during which time he was assigned to supervise the floor on which her cell was located. Id. at ¶ 35. He would go by Conley's cell daily and shine his flashlight up and down her body. Id. On one occasion, he also made an unwelcome sexual comment. Id.

On February 6, 2019, when Conley was no longer in solitary confinement, Bardon again pulled Conley out of her cell and into the side room, where he ordered her to sit in a chair. Id. at ¶ 37. Bardon then pulled Conley's head toward his crotch and made her touch his penis. Id. Conley tried to leave, but Bardon grabbed her arm and stuck his tongue in her mouth. Id. He also made unwanted sexual comments. Id. Video surveillance shows Bardon removing Conley from her unit, taking her into the side room, and Conley later frantically leaving the side room. Id. at ¶ 38. Bardon forced Conley into the side room on several other occasions, where he made unwelcome sexual comments and touched her without her consent. Id. at ¶ 39. Conley suffered physical and emotional harm because of these assaults. Id. at ¶ 48.

At all times relevant, the Sheriff's Department had surveillance cameras that monitored Conley's housing units, the areas where Bardon took Conley, and access in and out of the side room. Id. at ¶ 40. SCSD employees were responsible for monitoring the cameras. Id. At least three other correction officers were aware of Bardon's conduct but did not prevent Bardon from having access to her. Id. at ¶¶ 42-43.

## II. Procedural Background

Conley brought this action on December 11, 2020. Compl. [#1]. She filed an Amended Complaint [#4] on January 22, 2021, against Bardon, the Sheriff's Department, the SCSD

Supervisors, and three unnamed correction officers.[2] Against Bardon, Conley alleges assault and battery (Count I), indecent assault and battery (Count II), and kidnapping (Count III). Against the Sheriff's Department and the SCSD Supervisors, she alleges negligent training and supervision (Count IV). And against all the Defendants, she alleges negligent/intentional infliction of emotional distress (Count V), deliberate indifference (Count VI) and violation of PREA (Count VII) brought pursuant to 42 U.S.C. § 1983, and negligence (Count VIII).

In the pending Partial Motion to Dismiss [#16], the SCSD Supervisors seek dismissal of all claims against them, while the Sheriff's Department seeks dismissal of Conley's intentional infliction of emotional distress and section 1983 claims.

### III. Standard of Review

In evaluating a motion to dismiss for failure to state a claim, this court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).

---

[2] The Doe defendants are identified in the Amended Complaint [#4] by the last names Bennett, Schmitt, and Bailey. Id. at ¶¶ 10-11. Conley states that she will seek to amend her complaint once she discovers the Doe defendants' full names during discovery. Id. at ¶ 13.

### IV. Discussion

#### A. *Section 1983 Claims*

Section 1983 creates a civil cause of action against an individual acting under color of state law who violates a plaintiff's federally protected rights. 42 U.S.C. § 1983. "A claim under section 1983 has two essential elements. First, the challenged conduct must be attributable to a person acting under color of state law" and "second, the conduct must have worked a denial of rights secured by the Constitution or by federal law." Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997).

Conley brings two claims under section 1983: deliberate indifference in violation of the Eighth and Fourteenth Amendments and violation of PREA. Am. Compl. ¶¶ 69-83 [#4]. The Sheriff's Department and the SCSD Supervisors in their official capacities seek dismissal based on sovereign immunity, and the SCSD Supervisors in their individual capacities seek dismissal for failure to plead a prima facie case of supervisory liability under section 1983. Mot. to Dismiss 2 [#16].

##### 1. Sovereign Immunity

"[N]either a state agency nor a state official acting within his official capacity may be sued for damages in a section 1983 action." Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir. 1991) (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)). Conley's section 1983 claims against the Sheriff's Department and the SCSD Supervisors in their official capacities are therefore dismissed. See Hafer v. Melo, 502 U.S. 21, 25-28 (1991) (state officials may be held personally liable for damages because of actions taken in their official capacities only if they are sued in their individual capacities).

      2.       Supervisory Liability

To state a claim for supervisory liability under section 1983, a plaintiff must allege facts "showing that the supervisor's conduct sank to the level of deliberate indifference." Parker v. Landry, 935 F.3d 9, 14 (1st Cir. 2019). "A showing of deliberate indifference has three components: the plaintiff must show (1) that the officials had knowledge of facts, from which (2) the officials can draw the inference (3) that a substantial risk of serious harm exists." Id. (quoting Guadalupe-Báez v. Pesquera, 819 F.3d 509, 515 (1st Cir. 2016)) (internal quotation marks omitted). "[E]ven if the complaint contains facts plausibly showing deliberate indifference, the plaintiff must also allege facts giving rise to a causal nexus between the supervisor's acts or omissions and the subordinate's misconduct." Id. "In addition to deliberate indifference and causation, the plaintiff must allege facts showing that the supervisor was on notice of the subordinate's misconduct." Id.

Here, Conley has not identified any acts or omissions by the SCSD Supervisors that suggest deliberate indifference. Although she points to the history of sexual assaults at South Bay, she has not alleged that the SCSD Supervisors ignored the problem or failed to take corrective action. She states that because of the numerous reports of sexual assault at South Bay, the SCSD Supervisors knew or should have known that real-time monitoring of the surveillance cameras was necessary to ensure the safety of inmates and detainees, but she does not allege that such monitoring did not in fact occur.

The failure to identify such acts or omissions also cuts against a showing of causation. Even in the absence of affirmative acts that might constitute deliberate indifference, "a plaintiff sometimes can identify a causal nexus by juxtaposing the supervisor's omissions alongside a 'known history of widespread abuse sufficient to alert a supervisor to ongoing violations.'" Id. at

6

15 (quoting Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994)). In this case, though, Conley has not specified any such omissions.

Finally, Conley has not adequately pleaded notice. "In order for a subordinate's earlier conduct to put officials on notice of a substantial risk of serious harm, there must be some fact or facts that, whether viewed singly or in combination, plausibly signal a likelihood that particular misconduct may occur." Id. at 16. Conley has not alleged, though, that any of the SCSD Supervisors were aware of Bardon's previous misconduct to put them on notice of a substantial risk of serious harm to Conley. She has therefore failed to state a claim for supervisory liability against them.

       3.       Prison Rape Elimination Act

PREA was enacted by Congress in 2003 to address the problem of rape in prison by creating national standards to prevent, detect, and respond to sexual abuse and sexual harassment within confinement settings. See 34 U.S.C. §§ 30301-02. The statute directed the Attorney General to promulgate these standards, see id. § 30306, which were finalized in 2012, see 28 C.F.R. § 115.5 et seq. The standards establish a zero-tolerance policy for sexual abuse and sexual harassment and create data reporting requirements to ensure that facilities track the incidence of prison rape, take corrective action on an ongoing basis, and provide an assessment of their progress in addressing sexual abuse and sexual harassment. See id.

However, PREA does not create a private cause of action for allegations of prison rape, see Chao v. Ballista, 772 F.Supp.2d 337, 341 n.2 (D. Mass. 2011), nor does it grant prisoners any specific rights that can be asserted under section 1983, see Chinnici v. Edwards, No. 1:07-CV-229, 2008 WL 3851294, at *3 (D. Vt. Aug. 12, 2008). Conley therefore has not and cannot state a claim based on an alleged violation of PREA.

B.      *State Law Claims*

1.      Negligence

Conley brings three claims sounding in negligence—negligent training and supervision, negligent infliction of emotional distress, and negligence—against the Sheriff's Department and the SCSD Supervisors for misconduct committed within the scope of their employment. Am. Compl. ¶¶ 16-18, 60-68, 84-89 [#4]. The SCSD Supervisors seek dismissal, arguing that the Massachusetts Tort Claims Act ("MTCA") bars such claims against them.

The MTCA states that no "public employee shall be liable for any injury . . . caused by his negligent or wrongful act or omission while acting within the scope of his office or employment." Mass. Gen. Laws ch. 258 § 2. Conley does not contest that the SCSD Supervisors were acting within the scope of their employment. Pl's Mem. 9 [#18]. The negligence claims against the SCSD Supervisors are therefore barred by the MTCA.[3]

2.      Intentional Infliction of Emotional Distress

Conley also brings a claim for intentional infliction of emotional distress. Am. Compl. ¶¶ 64-68 [#4]. The Sheriff's Department seeks dismissal on the ground that the MTCA bars suit against public employers for the intentional acts of their employees, and the SCSD Supervisors seek dismissal for failure to plead a prima facie case. Mot. to Dismiss 1 [#16].

---

[3] Conley also argues that her claims "provide a basis for liability against the SCSD under the MTCA." Pl's Mem. 9 [#18]. The argument is superfluous where the SCSD is not seeking dismissal of Conley's negligence claims. See Mot. to Dismiss 1 [#16].

The MTCA bars claims against the Commonwealth, its agencies, and municipalities for intentional torts. Mass. Gen. Laws ch. 258 § 10(c). Conley's claim against the Sheriff's Department therefore fails as a matter of law.[4]

A claim for intentional infliction of emotion distress requires the plaintiff to show that (1) the defendant intended to inflict emotional distress or should have known it was likely to result; (2) the defendant's conduct was extreme and outrageous; (3) the actions of the defendant caused the emotional distress; and (4) the emotional distress sustained by the plaintiff was severe. See Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir 1996) (citing Agis v. Howard Johnson Co., 371 Mass. 140, 144-45, 355 N.E.2d 315 (1976)). The Amended Complaint [#4] does not include any allegations pertaining to the SCSD Supervisors' intent or what actions they took that could be considered extreme or outrageous. Conley has therefore failed to state a claim against the SCSD Supervisors for intentional infliction of emotional distress.

C. *Leave to Amend*

In her Opposition 12 [#18], Conley requests that, should the court conclude that the allegations against the SCSD Supervisors fail to state a claim of deliberate indifference, she be granted leave to amend her Eighth and Fourteenth Amendment claims. Pl's Opp. 12 [#18]. A party may amend its pleadings once as a matter of course within twenty-one days of serving it or within twenty-one days after service of a responsive pleading or Rule 12 motion. Fed. R. Civ. P.

---

[4] Conley counters that the Sheriff's Department is liable under the statutory public duty rule, Mass. Gen. Laws ch. 258 § 10(j). However, Conley's argument under that rule seems to be that the Sheriff's Department should be held liable for its own negligent acts in training, supervising, and employing Bardon and in placing him in Conley's unit. Pl's Mem. 10-11 [#18]. Those alleged acts are captured by Conley's three negligence claims against the Sheriff's Department, not an intentional tort claim.

15(a). In all other cases, a party may amend its pleading only with the consent of the other party or leave of the court. Id.

Under Federal Rule of Civil Procedure 15(a), leave to amend a pleading shall be freely granted "when justice so requires." Nevertheless, a motion for leave to amend may be denied in cases of (1) undue delay, (2) bad faith or dilatory motive, (3) undue prejudice, or (4) futility of amendment. See Foman v. Davis, 371 U.S. 178, 182 (1962). Where discovery in this case has only just begun, the court grants Conley leave to amend her Eighth and Fourteenth Amendment claims against the SCSD Supervisors.

## V.     Conclusion

For the foregoing reasons, the Motion to Dismiss [#16] is GRANTED. Conley's section 1983 claims (Counts VI and VII) and her intentional infliction of emotional distress claim (Count V) are dismissed as to the Sheriff's Department and the SCSD Supervisors. Her negligence claims (Counts IV, V, and VIII) are dismissed as to the SCSD Supervisors. The court GRANTS Conley leave to amend her complaint as to Eighth and Fourteenth Amendment claims brought under § 1983 against the SCSD Supervisors. Any such amended complaint shall be filed no later than August 25, 2021.

IT IS SO ORDERED.

August 11, 2021                                         /s/ Indira Talwani
                                                        United States District Judge